**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SUSAN LYNN SCHMELTZLY | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO.  23-1629 |

**<u>MEMORANDUM</u>**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                               January 18, 2024

Susan Lynn Schmeltzly ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g),

of the final decision of the Commissioner of the Social Security Administration ("the

Commissioner"), denying her claim for disability insurance benefits ("DIB") under Title II of the

Social Security Act.   Plaintiff has filed a brief in support of her request for review, the

Commissioner has responded to it, and Plaintiff has filed a reply.   For the reasons set forth below,

Plaintiff's request for review is granted and the case remanded to the Commissioner.

**I.      PROCEDURAL HISTORY**[2]

On December 13, 2016, Plaintiff applied for DIB, alleging that her disability commenced

on December 12, 2015.   Pl. Br. at 2; R. 590.   The claim was denied, initially; therefore, Plaintiff

requested a hearing.   Pl. Br. at 2.   On March 29, 2019, Administrative Law Judge Elizabeth Ebner

("ALJ Ebner") held a hearing.   *Id.*   Applying the sequential evaluation process ("SEP"),[3] ALJ

---

[1] Martin O'Malley became Commissioner of the Social Security Administration, on December 20, 2023.  Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit.  No further action need be taken to continue this suit, pursuant to the last sentence of 42 U.S.C. § 405(g).

[2] The court has reviewed and considered the following documents in analyzing this case:  Plaintiff's Brief and Statement of Matters Complained of On Appeal ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply"), and the administrative record.  ("R.").

[3] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

Ebner denied Plaintiff's claim, on June 27, 2019.  *Id.*  Plaintiff sought review with the Social

Security Administration's Appeals Council; her request was denied, on July 15, 2019.  *Id.*  Plaintiff

next sought judicial review in this district and, upon the Commissioner's motion for remand, the

case was remanded to the Commissioner.  *Id.*

On May 4, 2022, per COVID-19 precautions, Plaintiff appeared for a telephonic hearing,

before Margaret M. Gabell, Administrative Law Judge ("the ALJ"); Plaintiff, represented by an

attorney, and Cecelia Thomas, a vocational expert, ("the VE") testified at the hearing.  R. 590.  On

June 1, 2022, the ALJ, using the SEP, issued an unfavorable decision.  R. 590-618.  The Appeals

Council denied Plaintiff's request for review, on February 28, 2023, making the ALJ's findings

the final determination of the Commissioner.  R. 572-76.  Plaintiff presently seeks judicial review

and the parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II.      FACTUAL BACKGROUND

A.      Personal History

Plaintiff, born on October 23, 1964, R. 629, was 57 years old on the date of the ALJ's

---

1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).

2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).

3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).

4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).

5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience in conjunction with criteria listed in Appendix 2, she is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

decision.  She last worked in December 2015, R. 633, and lives with her husband and younger daughter.  R. 638.

B.        Plaintiff's Testimony

At the May 4, 2022 administrative hearing, Plaintiff testified about her impairments.  R. 633-47.  She stated that her conditions remained essentially the same as they were at the prior March 29, 2019 hearing.  R. 633.  Notably, after that hearing, Plaintiff started Botox injections to treat her migraine headaches; as a result, her daily migraine headaches decreased in frequency to three or four times per week.  R. 634.  She takes two other medications, to prevent and to treat migraines upon onset.  R. 634.  When a migraine headache commences, Plaintiff lies down in a dark room for four to six hours, until it stops.  R. 635.

Plaintiff suffers from fibromyalgia, which mostly impairs her elbows and right shoulder. R. 634.  She experiences daily arthritic neck pain.  R. 643.  Plaintiff also limps, because of her right ankle, which has endured two surgeries.  R. 640.  After the last surgery, a new doctor diagnosed neuropathy for her pins and needles sensation, numbing, and pain.  R. 641.

Plaintiff estimated that she could walk, at most, one to two blocks, before ankle and back pain would force her to stop.  R. 645.  She can only stand in place for about the amount of time it would take her to walk one to two blocks.  R. 645.

Plaintiff has depression and anxiety; her doctor has tried several medications and dosages to treat her conditions.  R. 635-36.  Unfortunately, her symptoms are not well-controlled and she spends a good portion of each day sitting on the couch doing nothing.  R. 635.  These symptoms existed prior to her date last insured in March 2018.  R. 636.  However, her mental health has deteriorated, in a part because of stress caused by her husband's worsening health.  R. 636-37. Plaintiff sees a therapist, Dana Greene, every three weeks; talking to Ms. Greene helps a little with

her anger.  R. 637.

Plaintiff has volatile anger and occasionally lashes out physically; five months prior to the administrative hearing, she pushed her husband so hard that he fell and struck his head.  R. 637. Before March 2018, she was more violent, hit her husband approximately twice each week, and, on one occasion, struck her older daughter.  R. 638.

Plaintiff has a history of pulling or cutting her hair and eyelashes; she started this self-mutilating when young because of her depression.  R. 639-40.  She last cut out a clump of her hair a few months prior to the administrative hearing.  R. 640.

Plaintiff has post-traumatic stress disorder, which causes flashbacks and nightmares.  R. 643.  Flashbacks, which make her jittery and unable to function for five to ten minutes, R. 643, can be triggered by smells, or seeing a bald-headed person, because her father (her molester) was bald.  R. 647.

C.      Vocational Testimony

At the outset of the administrative hearing, Plaintiff agreed to accept the prior vocational expert's testimony concerning her past work.  R. 632.  Plaintiff's past jobs were all semi-skilled, [4] light[5] positions:  (1) food server; (2) security guard; and (3) deli worker.  R. 632.  The ALJ asked the VE to consider an individual who could perform light work and had the following limitations: occasional postural activity; never climb ladders, ropes and scaffolds; no exposure to unprotected heights; occasional climbing of ramps and stairs; no use of foot controls; no pushing or pulling with the lower extremities; avoid temperature extremes; occasional exposure to dust, odors,

---

[4] "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties."  20 C.F.R. § 404.1568(b).  It is less complex than skilled work but more complex than unskilled work.  *Id.*  "A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks."  *Id.*
[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  20 C.F.R. § 404.1567(b).

wetness, gases, fumes, and poorly ventilated areas; able to perform unskilled work, involving simple routine tasks, simple decisions; tolerating occasional changes in the workplace, occasional contact with coworkers and supervisors, no interaction with the public.  R. 648.  The VE responded that this person could perform Plaintiff's past security guard job.  R. 648.  The VE noted that, although this job was classified in the Dictionary of Occupational Titles ("DOT") as semi-skilled, it was essentially an entry-level position that could be performed by an individual limited to unskilled[6] work.  R. 648-49, 652-53.  The VE also identified alternative jobs the individual could perform:  (1) mail room clerk, 30,000 positions in the national economy; (2) room cleaners, 120,000 positions in the national economy; and (3) marking clerk, 75,000 positions in the national economy.  R. 649-50.

Next, the VE was asked to consider the same individual, but needing to alternate between sitting and standing every 60 minutes.  R. 650.  The VE was unable to estimate how many security guard jobs would remain available, with the additional limitation.  R. 650.  Of the alternative jobs, 12,000 positions would remain for mail room clerk and 7,500 for marking clerk.  R. 650-51.  The room cleaner job would be eliminated.  R. 651.  However, the individual could work as an:  (1) office helper, 8,000 positions in the national economy; and (2) office machine operator, 7,000 positions in the national economy.  R. 651.  If, in addition to normally-allowed breaks, the person required two to three additional breaks of 10 to 15 minutes each, they could not work.  R. 651-52.  If the individual would miss two to three days of work each month, was off-task 15 to 20 percent of the day, or had frequent problems interacting with coworkers or supervisors, they could not work.  R. 652.

---

[6]"Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength . . . [a] person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

The VE opined that the ability to sit for only four hours and stand or walk for two hours would not permit full-time employment.  R. 653.  Finally, a restriction to only occasional use of the bilateral upper extremities would eliminate some undetermined number of the jobs the VE identified.  R. 653.

### III.    THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1.    [Plaintiff] meets the insured status requirements of the Social Security Act through March 31, 2018.

2.    [Plaintiff] not engaged in substantial gainful activity during the period from her alleged onset date of December 12, 2015, through her date last insured of March 31, 2018 (20 CFR 404.1571 *et seq.*).

3.    Through the date last insured, [Plaintiff] had the following severe impairments:  migraines, osteoarthritis of the ankles and knees, disorders of the spine, fibromyalgia, carpal tunnel syndrome, asthma, major depressive disorder, and generalized anxiety disorder (20 CFR 404.1520(c)).

4.    Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, though the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could perform postural activities occasionally, she could not climb ladders/ropes/scaffolds, she could not work at unprotected heights, and she could climb ramps and stairs occasionally; she could never use foot controls and could not push/pull with her lower extremities; she could reach/handle/finger frequently; she needed to avoid temperature extremes and could have occasional exposure to dust, odors, wetness, gases, fumes, and poorly ventilated areas; she was limited to unskilled simple routine tasks and making simple decisions with occasional changes in the workplace and no direct public interaction; and she needed

> to alternate sitting/standing every 60 minutes with a 10-minute change of position but remaining on task.

> 6.    Through the date last insured, Plaintiff was unable to perform any past relevant work (20 CFR 404.1565).

> 7.    [Plaintiff] was born on October 13, 1964, and was 53 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

> 8.    [Plaintiff] has at least a high school education (20 CFR 404.1564).

> 9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [she] has transferrable skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> 10.    Through the date last insured, considering [Plaintiff's] age, education, work experience and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).

> 11.    [Plaintiff] has not been under a disability, as defined in the Social Security Act, from December 12, 2015, the alleged onset date, through March 31, 2018, the date last insured (20 CFR 404.1520(g)).

R. 593, 596, 600-01, 615-17.

## IV.    DISCUSSION

A.    Standard of Review

Judicial review of the Commissioner's final decision is as follows.  The Commissioner's findings of fact will not be disturbed if they are supported by substantial evidence.  *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).  Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.      Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially

demonstrate that a medically determinable impairment prevents her from returning to her past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that her impairment results in functional limitations to performing her past relevant work, then the burden of proof shifts to the Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given her age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.      Review of the Administrative Law Judge's Decision

Applying the SEP, the ALJ determined that, although Plaintiff could not perform her past relevant work, there were other light, unskilled jobs she could perform and, hence, she was not disabled. R. 590-618. Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by: (1) failing to properly apply Social Security Ruling ("SSR") 19-4p, when evaluating her migraine headaches; (2) improperly rejecting the opinions of her treating rheumatologist, Mark A. Durback, M.D.; (3) improperly rejecting the opinions of her treating therapist, Dana M. Greene, M.Ed., LPC; and (4) posing a defective hypothetical question to the VE. Pl. Br. at 6-24. The Commissioner disputes Plaintiff's assertions. Resp. at 3-15. This court finds that the ALJ failed to properly apply SSR 19-4p when determining that Plaintiff did not medically equal Listed Impairment 11.02. The ALJ's reversible error obviates the need to address Plaintiff's other arguments, which concern later steps of the SEP.

1. The ALJ Reversibly Erred when Applying SSR 19-4p

Plaintiff argues that the ALJ failed to properly apply SSR 19-4p when deciding that she did not medically equal Listed Impairment ("LI") 11.02. Pl. Br. at 6-9. Although the Commissioner disputes this issue, Resp. at 6-8, this court agrees that the ALJ reversibly erred in her application of SSR 19-4p.

The ALJ deemed Plaintiff's migraine headaches to be a severe impairment.  R. 593.  She further determined that Plaintiff's migraines did not medically equal LI 11.02.  R. 598  Although the ALJ stated that she was applying SSR 19-4p, her entire discussion of the medical equivalence issue was comprised of two sentences which contain no mention of the factors SSR 19-4p identifies as relevant to determining whether a claimant's migraine headaches medically equal LI 11.02.  *See* R. 598.   The ALJ's omission constitutes reversible error.

SSR 19-4p indicates that migraine headaches can medically equal LI 11.02, the listing for epilepsy.  2019 WL 4169635, *7.  The ruling specifically identifies LI 11.02 paragraphs B and D as the most relevant to a medical equivalency determination.  *Id.*  The ruling further notes that paragraph B requires that seizures occur once a week for at least three months, despite adherence to prescribed treatment.  *Id.*  Paragraph D requires seizures occurring at least once every two weeks for at least three months, despite adherence to prescribed treatment and marked limitation in one area of functioning.  *Id.*  The five areas of functioning are:  physical functioning; understanding, remembering or applying information; interacting with others; concentrating, persisting or maintaining pace; or adapting or managing oneself.  *Id.*

In her decision, the ALJ failed to identify the distinct requirements to meet paragraphs B and D of LI 11.02; hence, she did not explicitly consider them.  Also, the ALJ failed to acknowledge Plaintiff's testimony that her migraine frequency was, at best, three to four headaches each week for many years.  R. 633-34.  Plaintiff's medical records prior to her date last insured largely corroborate her testimony about her migraine frequency:  (1) neurologist Todd R. Garber, M.D.'s October 5, 2016 treatment note indicates that Plaintiff suffered migraine headaches approximately 15 days each month, each lasted the whole day and was accompanied by vomiting, R. 343; (2) Dr. Garber's November 17, 2016 treatment note indicates that, despite medication

change, Plaintiff still had three headaches per week of similar intensity as previously, R.341; (3)

Dr. Garber's January 16, 2017 treatment note indicates, that, after cervical paraspinal injections

on December 5, 2016, Plaintiff's migraines reduced in frequency to one or two per week and had

lessened in intensity, R. 366; (4) a December 6, 2017 neurology treatment note indicates that

Plaintiff suffers migraine headaches three to four times per week, R. 488; and (5) a January 16,

2018 neurology treatment note indicates that Plaintiff suffers two to three headaches per week, six

to twenty-four hours in duration and of high intensity.  R. 482.  Even the lowest reported migraine

frequency over the relevant period far exceeds the frequency requirements of LI 11.02, paragraph

B.   The ALJ's failure to acknowledge this evidence in her cursory treatment of the medical

equivalency decision constitutes reversible error.  *See Brown v. Kijakazi*, Civ. A. No. 20-5391,

2021 WL 5356802, *5 (E.D. Pa. Nov. 17, 2021).  Upon remand, the ALJ must explicitly determine

whether Plaintiff's documented number of migraine headaches during the relevant period

medically equals LI 11.02.  In doing so, she must explicitly acknowledge that the documented

frequency of Plaintiff's migraine headaches far exceeds the minimum requirements in LI 11.02,

paragraph B.

2.   <u>This Case is Remanded</u>

Plaintiff's remaining arguments concern:  (1) the ALJ's evaluation of medical evidence in the record, (2) how the ALJ's evaluation of that medical evidence adversely affected her evaluation of Plaintiff's residual functional capacity, and (3) whether, as a result, the hypothetical question posed to the VE was adequate to support the non-disability finding.  All of these errors relate to later steps of the SEP.  Upon remand, if the ALJ finds that Plaintiff's migraine headaches medically equal LI 11.02, there will be no need to address subsequent SEP steps, because Plaintiff will be found disabled at step three.  Hence, Plaintiff's remaining arguments will not be addressed at this time.

An implementing order and order of judgment follow.